**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 02 2012, 8:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF A.C., a minor child, AND HER FATHER, D.B., | ) ) ) ) ) |
| D.B. | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | )   No. 49A05-1105-JT-286 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Co-Appellee-Petitioner, | ) ) |
| and | ) ) |
| CHILD ADVOCATES, INC., | ) ) |
| Co-Appellee (Guardian Ad Litem). | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Danielle Gaughan, Judge Pro Tem

**February 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

D.B. ("Father") appeals the involuntary termination of his parental rights to his child, A.C. On appeal, Father claims the Indiana Department of Child Services failed to establish that A.C. had been removed from Father's care for at least six months pursuant to a dispositional decree at the time the involuntary termination petition was filed, as is required by Indiana Code section 31-35-2-4(b)(2)(A). We affirm.

## FACTS AND PROCEDURAL HISTORY

Father is the biological father of A.C., born in October 2007. At the time of A.C.'s birth, paternity had not been established. In September 2009, the local Marion County office of the Indiana Department of Child Services ("MCDCS") filed a petition alleging A.C. was a child in need of services ("CHINS") because A.C.'s biological mother ("Mother") and sole legal guardian had died. Although Father was named as the alleged biological father of A.C., Father was incarcerated on carrying a handgun without a license and carjacking charges at the time of Mother's death and was therefore unavailable to care for A.C. A.C. was temporarily placed with the child's maternal grandparents, and MCDCS sent a copy of the CHINS petition, summons, parental rights form, and incarcerated parent survey to Father in prison. Father thereafter requested and was granted the appointment of counsel to represent

him in the pending CHINS matter.

A hearing on the CHINS petition was held in January 2010, after which the juvenile court adjudicated A.C. to be a CHINS. Following a dispositional hearing on February 9, 2010, the juvenile court issued a dispositional order formally removing A.C. from Father's custody and making the child a ward of MCDCS. In addition, the juvenile court incorporated a Participation Decree in its Dispositional Order directing Father to complete a variety of tasks and services, including establishing paternity of A.C., with the ultimate goal being reunification of Father and A.C. Father thereafter appealed the juvenile court's CHINS determination and Dispositional Order on several grounds including: (1) lack of personal jurisdiction over Father; (2) alleged due process violations; (3) erroneous CHINS determination as to Father; and (4) abuse of discretion in ordering Father to establish paternity over A.C.'s half-sibling, E.C. Another panel of this Court issued a *Memorandum Decision* on January 31, 2011, affirming the juvenile court's CHINS adjudication and Dispositional Order. *See In re A.C.*, 941 N.E.2d 569 (Ind. Ct. App. 2011). However, the matter was remanded with instructions that the juvenile court "change the order to require [Father] to establish paternity of A.C. only," in light of the fact that another man, S.W., had already established paternity of E.C. prior to the CHINS hearing. *See id.*, slip op. at 4. In all other matters, the juvenile court's orders were affirmed.

The juvenile court promptly complied with this Court's directions by issuing an order the same day. The order reads, in pertinent part, as follows:

> Comes now the Court, on its own Motion, and having reviewed the Memorandum Decision of the Court of Appeals of Indiana, notes that the

matter was remanded for the purposes of correcting an error in the Court's order of February 9, 2010. The Court having reviewed the Memorandum and the Court's record, now finds that the Court entered a second child's name in error, and corrects the order. The Court hereby corrects its order of February 9. 2010[,] insofar as the Court's *dispositional order and parental participation orders* issued that date direct [Father] to establish paternity over [E.C.]; the Court strikes that portion of the order from the record, as [Father] is only ordered to establish paternity as an alleged father of [A.C.]. The Court notes that [Father] was only alleged to be the father of [A.C.], as paternity had been established for [E.C.].

*All other orders remain in effect*.

Exhibits p. 18 (emphasis added). Thus, other than modifying its February 2009 order to reflect that Father was no longer required to establish paternity of E.C., all the remaining court-ordered reunification services set forth in the juvenile court's Participation Decree and/or Dispositional Order remained in effect.

Shortly thereafter, Father filed a Petition for Rehearing with this Court, claiming our decision to affirm the juvenile court was erroneous because another panel of this Court had recently held in *In re M.R.*, 934 N.E.2d 1253 (Ind. Ct. App. 2010) that a parental Participation Decree may not be entered against a putative father. This Court granted Father's Petition for Rehearing for the sole purpose of clarifying why *M.R.* was distinguishable from Father's case, and on April 21, 2011, we reaffirmed our earlier opinion in a *Memorandum Decision on Rehearing*. *See In re A.C.*, 946 N.E.2d 94 (Ind. Ct. App. 2011), *trans. denied*. In affirming our earlier opinion, however, we stated that we "embrace the bright-line rule announced in *M.R.*, that is, a putative father should not be ordered to engage in CHINS-related services until his paternity of the CHINS is established." *Id.*, slip. op. at 1. Accordingly, we remanded with instructions for the juvenile court to "issue a new

4

Participation Decree ordering only that [Father] establish paternity of A.C." *Id.* We thereafter advised the juvenile court that should DNA testing confirm Father's paternity of A.C., the court "may then enter a Participation Decree establishing the requirements [Father] must complete to move toward reunification with A.C." *Id.* Our original opinion was otherwise affirmed "in all other respects." *Id.*

Meanwhile, in September 2010, MCDCS filed a petition seeking the involuntary termination of Father's parental rights to A.C. An evidentiary hearing on the termination petition was held on April 4, 2011. During the termination hearing, MCDCS presented substantial evidence establishing Father, who remained incarcerated, had never seen A.C. and remained incapable of providing the child with a safe and stable home environment. In addition to his incarceration, the evidence admitted during the termination hearing showed Father had an extensive criminal history, which included several felony convictions. Father also had received approximately eleven conduct reports since his incarceration began in 2007, most recently in March 2011 for the use or possession of an illegal substance and all of which resulted in the loss of privileges such as participating in a vocational training program to obtain a barber's certificate and taking a GED examination to possibly obtain a sentence reduction. Father's current sentence was even lengthened by one additional month as a result of his bad conduct while incarcerated. The evidence also established that Father had no relationship with A.C. and still had not established paternity of the child. As for A.C.'s well-being, the evidence demonstrated the child was living and thriving in pre-adoptive relative foster care with the child's maternal grandparents and younger half-sibling in what the

5

MCDCS family case manager described as a "perfect family setting." Appellant's Appendix p. 14.

At the conclusion of the termination hearing, the juvenile court took the matter under advisement pending the results of Father's DNA testing. On May 9, 2011, Father submitted DNA test results establishing Father's paternity of A.C. On May 25, 2011, the juvenile court entered its judgment terminating Father's parental rights to A.C. This appeal ensued.

## DISCUSSION AND DECISION

Initially, we note our standard of review. When reviewing a juvenile court's judgment, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.*, 804 N.E.2d 258, 264 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences to be drawn therefrom that are most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a court's judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied; see also Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).

Before an involuntary termination of parental rights may occur in Indiana, the State is required to allege and prove, among other things:

(A) that one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

* * *

    (iii)    The child has been removed from the parent and has been

6

under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child . . . .

Ind. Code § 31-35-2-4(b)(2)(A). The State's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2 (2008)). Moreover, Indiana Code section 31-35-2-8(a) provides that if a juvenile court finds that the allegations in the termination petition are true, "the court *shall* terminate the parent-child relationship." *Id.* (emphasis added).

Father does not challenge the sufficiency of the evidence supporting the juvenile court's findings of primary fact, including the court's findings that: (1) there is a reasonable probability the conditions resulting in A.C.'s removal and continued placement outside Father's care will not be remedied; (2) termination of parental rights is in A.C.'s best interests; and (3) MCDCS has a satisfactory plan for the future care and treatment of A.C. *See* Ind. Code § 31-35-2-4(b)(2)(B)-(D). Rather, Father's sole allegation of error on appeal is that MCDCS failed to prove A.C. was removed from Father's care pursuant to a dispositional order for the requisite six-month time period mandated by Indiana Code section 31-34-2-4(b)(2)(A).

In making this argument, Father asserts that our *Memorandum Decision on Rehearing* in this matter, issued in April 2011, remanded the case to the juvenile court with instructions that "a new Participation Decree be issued." Appellant's App. p. 6. Father further asserts

7

that because a Participation Decree "is included amongst dispositional decrees contemplated by I.C. § 31-34-20-1," the "relevant dispositional decree" for removal purposes under Indiana's involuntary termination statute "would be the new Participation Decree," rather than the juvenile court's February 2010 Dispositional Order. *Id.* at 10; *see also* Ind. Code § 31-35-2-4(b). Father therefore contends that MCDCS failed to satisfy the jurisdictional mandates of Indiana Code section 31-35-2-4(b)(2)(A) due to the fact it filed the involuntary termination petition pertaining to Father and A.C. in September 2010, several months before a relevant Dispositional Order could have been made.

We agree with Father that a juvenile court may issue a Dispositional Order that requires a CHINS's "parent, guardian, or custodian to complete services recommended by the department and approved by the court under IC 31-34-16, IC 31-34-18, and IC 31-34-19." *See* Ind. Code § 31-35-20-1; *see also* Ind. Code § 31-34-20-3. Nevertheless, there are marked differences between Dispositional Orders, which are governed by Indiana Code sections 31-34-19 *et seq.*, and parental Participation Decrees, which are governed by Indiana Code section 31-34-16 *et seq.* Indiana's CHINS statutes also provide that a juvenile court "may hold a hearing on a petition [for parental participation] concurrently with a dispositional hearing or with a hearing to modify a dispositional decree," which appears to be what occurred in the instant case. Ind. Code § 31-34-16-4(a).

The juvenile court's February 9, 2010, Dispositional Order reads, in pertinent part, as follows:

> The Court[,] having considered the issue of Participation in a treatment program and having conducted a hearing, now Orders that a Participation

8

Decree should be entered.

IT IS THEREFORE ORDERED, that [Father] do the following:

\* \* \*

SOURCE OF INCOME: Secure and maintain a legal and stable source of income . . . .

SUITABLE HOUSING: Obtain and maintain suitable housing . . . .

\* \* \*

ESTABLISH PATERNITY: [Father] shall establish paternity as to [A.C.] and [E.C.].

\* \* \*

APPROVED AND MADE AN ORDER OF THE COURT THIS 9th day of February, 2010.

\* \* \*

The Court proceeds to disposition and adopts the Pre-Dispositional Report of [MCDCS] and incorporates same as the findings of the Court, including plan of permanency which is hereby ordered. The Court also orders the Parental Participation, which is made a part of the order.

\* \* \*

The Court now orders [A.C.] removed from the care of [F]ather . . . pursuant to this Dispositional Order.

*Exhibits* p. 14-17. Although we acknowledge that the juvenile court incorporated its Participation Decree in its Dispositional Order, it is equally clear from the language cited above that the Participation Decree issued in this case was a separate and distinct order from the juvenile court's Dispositional Order, notwithstanding the fact the hearings on both matters were conducted concurrently, as is authorized by Indiana Code section 31-34-16-4(a). Moreover, MCDCS correctly points out this Court did not reverse and remand the juvenile court's February 2010 Dispositional Order in our *Memorandum Decision on Rehearing*. *See In re A.C.*, 946 N.E.2d 94 (Ind. Ct. App. 2011), *trans. denied*. To the contrary, after indicating that we "embrace[d]" the "bright-line rule announced in *M.R.* that a putative father

9

should not be ordered to engage in CHINS-related services until his paternity is established, we remanded the case with instructions that the juvenile court "issue a new *Participation Decree* ordering "only that [Father] establish paternity of A.C." *Id.,* slip op. at 2 (emphasis added). We thereafter affirmed our original opinion "*in all other respects*." *Id.* (emphasis added). At no point in Father's prior CHINS appeals did this Court order the juvenile court to issue a new Dispositional Order to reflect a different removal date from Father. Accordingly, we conclude that A.C. was removed, pursuant to a Dispositional Order, in February 2010, approximately seven months prior to the MCDCS's filing of the involuntary termination petition in September 2010, thus satisfying the jurisdictional mandates of Indiana Code section 31-35-2-4(b)(2)(A). We therefore find no error.

The judgment of the juvenile court is affirmed.

KIRSCH, J., and BARNES, J., concur.